UNITED STATES of America,
Respondent,

v.

Vittorio AMUSO, Petitioner.

No. 97 CV 2050.

United States District Court,
E.D. New York.

June 4, 1998.

Zachary W. Carter, United States Attorney, (Daniel S. Dorsky, Assistant United States Attorney, of counsel), Brooklyn, NY, for respondent.

Haddon, Morgan & Foreman, P.C., Michael E. Tigar, Denver, CO, Paul B. Bergman, New York, NY, for petitioner.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

On April 22, 1997 petitioner Vittorio Amuso filed this petition for habeas corpus pursuant to 28 U.S.C. § 2255, claiming his trial counsel, Gerald Shargel, was ineffective.

On June 15, 1992, petitioner, then the Boss of the Luchese Organized Crime Family, was found guilty by a jury on all fifty-four counts of a superseding indictment charging him with violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(a) and (d), as well as extortion, tax fraud, and substantive and conspiracy violations constituting RICO predicate acts.

The government proved beyond any reasonable doubt all fifty-four counts, including the charges that petitioner was guilty of ordering the murder of nine persons, namely, Sorecho Nalo, Thomas "Red" Gilmore, Michael Pappadio, John Petrucelli, John Morrisey, Bruno Facciola, Michael Salerno, Larry Taylor, and Al Vioconti; attempting to murder or conspiring to murder another five persons, namely, Anthony Accetturo, Anthony Accetturo, Jr., Joseph La Morte, Joseph Martinelli, and Peter Chiodo; and committing extortion, bribery, and tax fraud. As befitted a Boss of a Crime Family, petitioner did not personally inflict the death wounds on the murder victims but ordered others to carry out the crimes.

This Court sentenced petitioner on October 9, 1992 to life imprisonment, a fine, and a special assessment. The Court of Appeals for the Second Circuit affirmed on April 20, 1994. *United States v. Amuso,* 21 F.3d 1251 (2d Cir.), *cert. denied,* 513 U.S. 932, 115 S.Ct. 326, 130 L.Ed.2d 286 (1994). The opinion by the Court of Appeals summarizes in some detail the evidence at trial. *Id.* at 1254–57.

### I

■ The government says that the petition was not filed within time limits prescribed by 28 U.S.C. § 2255. The Antiterrorism and Effective Death Penalty Act of 1996 (the Act), Pub.L. No. 104–132, 110 Stat. 1214, 1220 (1996), amended 28 U.S.C. § 2255 to require that a habeas petition be filed no later than one year after the date on which a judgment of conviction becomes final. The Act became effective on April 24, 1996.

Petitioner filed the application for habeas corpus on April 22, 1997, two days less than a year after the effective date of the Act.

In *Peterson v. Demskie,* 107 F.3d 92, 93 (2d Cir.1997), the Court of Appeals said in dicta that in circumstances where a petitioner has had several years to contemplate bringing a habeas corpus petition, it saw "no need to accord a full year after the effective date of the Act." A petitioner must be accorded a "reasonable time" to file a petition, a standard not to be "applied with undue rigor." It is true that Amuso waited to file his petition for about a year and six months after the Supreme Court denied certiorari. But under the circumstances, the Court deems the petition filed within a reasonable time.

### II

This Court, after being advised that Mr. Shargel had potential conflicts of interest, held a hearing on March 20, 1992, two months before the trial, to satisfy the requirements set forth in *United States v. Curcio,* 680 F.2d 881 (2d Cir.1982). Amuso, Mr. Shargel, the government attorneys, and later another defense attorney, Martin Geduldig, attended.

Mr. Shargel opened the hearing by stating that he and the government had "discussed several potential conflicts of interest that Mr. Amuso is prepared to waive." He advised the Court that Mr. Geduldig was "an independent counsel", that his participation would "ameliorate some of these conflicts", but that, in any event, "even absent independent counsel, Mr. Amuso [had] been fully apprised," and Mr. Shargel had "discussed with him in detail all of these potential conflicts, and he is prepared to waive them."

Assistant United States Attorney Gregory O'Connell described the "inventory of conflicts." Mr. Shargel (1) was personally a target "of a criminal tax and obstruction of justice investigation," (2) had "for quite some time, represented a co-defendant in the superseding indictment, namely, Anthony Cas-

so," the Underboss of the Luchese crime family, who was "currently a fugitive," (3) was through his office representing Dennis DeLucia, who had been convicted in an earlier case in which Amuso had been indicted, (4) was representing Michael Vuolo, a potential witness in the case, (5) had represented Sammy Gravano, the Underboss of the Gambino Crime Family, who was then, with the advice of other counsel, cooperating with the government in the Gotti case, (6) through his office had represented Joseph Zito, formerly a co-defendant of Amuso, (7) had seen Peter Savino, a potential witness in the case, about a grand jury matter, and (8) had been approached by Barbara Amuso, Amuso's wife, and Lillian Casso, Casso's wife, who had been subpoenaed and had a "longstanding relationship" with Mr. Shargel.

Mr. Shargel explained that he would represent Mrs. Amuso only if it would not exacerbate the conflict problem and that if the potential witnesses were called Mr. Geduldig would conduct the cross-examination. Mr. Shargel added that from what he had read in the transcript of the John Gotti trial then ongoing, Gravano had not waived his attorney client privilege. Mr. Shargel affirmed that he had made certain not to share any information he' had learned from Gravano with Amuso or anyone on the trial team.

Mr. O'Connell confirmed his understanding that Mr. Shargel would insure that Amuso had been properly advised and counseled as to the foregoing conflicts by having Mr. Geduldig, who posed no conflicts, review with Mr. Amuso each of the conflicts and "their ramifications."

The Court then addressed a few preliminary remarks to Amuso and emphasized that Amuso should discuss the conflicts with Mr. Geduldig, and that he was entitled "to a lawyer that doesn't have any of the problems" that had been discussed. Amuso acknowledged that he understood.

Later the same day, Amuso and Messrs. Shargel, Geduldig, O'Connell, as well as Mr. Alan Futerfas, an associate of Mr. Shargel, returned to the courtroom. Mr. Geduldig, who had an opportunity to talk to Amuso at length, reported that he and Amuso had discussed the three categories in which Mr.

Shargel had a conflict or a potential conflict, namely, that (1) Mr. Shargel was under investigation, (2) several persons whom Mr. Shargel had represented were potential witnesses, and (3) several persons whom Mr. Shargel had represented were not potential witnesses but presented potential conflicts.

Most prominent in the third category was Anthony Casso, the Underboss of the Luchese crime family. He had become a fugitive in company with Amuso, and was a co-defendant in the superseding indictment. Mr. Shargel was not representing Casso in the pending case.

The Court asked Mr. Geduldig whether he had "discussed all these matters" with Amuso. Mr. Geduldig said he had done so and added that if any witness previously represented by Mr. Shargel did testify and did not waive the privilege, Mr. Geduldig would conduct the cross-examination. He confirmed that Amuso had no objections to the procedure.

The Court then elicited from Amuso that he had an adequate opportunity to discuss the potential conflicts with Mr. Geduldig, had no problem with the fact that Mr. Shargel was under government investigation, and understood the conflict concerning people whom Mr. Shargel had represented in the past who might become witnesses or who might have information useful in Amuso's defense. Amuso informed the Court that "I still want him [Mr. Shargel] as my attorney."

Amuso's present lawyers say the Court was derelict in (1) conducting the hearings as to Mr. Shargel's conflicts, which Amuso did not adequately waive and (2) failing to disqualify Mr. Shargel because some of the conflicts were "unwaiveable as a matter of law."

### III

■ The legal standard that this Court follows in assessing Amuso's claims has been set forth by the Court of Appeals for the Second Circuit, most recently in *United States v. Stantini*, 85 F.3d 9 (2d Cir.) *cert. denied*, —— U.S. ——, 117 S.Ct. 498, 136 L.Ed.2d 390 (1996). A claim that counsel is conflicted is in essence a claim of ineffective

assistance of counsel. Generally, in order to succeed on such a claim, a defendant must show prejudice, *Strickland v. Washington*, 466 U.S. 668, 681, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), which will be presumed if the defendant has established (1) that counsel actively represented a conflicting interest and (2) that an actual conflict of interest adversely affected counsel's performance. *Strickland*, 466 U.S. at 681, 104 S.Ct. at 2064.

■ Even if a defendant establishes an actual conflict, he must make a further showing of a lapse of representation resulting from the conflict. To prove such a lapse, he must demonstrate that some "plausible alternative defense strategy or tactic" could have been, but was not, pursued due to counsel's other loyalties or interests. *Id.*

In their papers in support of Amuso's petition, his lawyers argue that Mr. Shargel had an actual conflict because he (1) had previously represented potential witnesses "who played a role" in the government's case against Amuso, (2) was the attorney for Casso, and (3) was the subject of a government investigation arising out of his acting as "house counsel" for the Gambino Crime Family.

### IV

■ Petitioner's claim that former clients of Mr. Shargel "played a role" in the government's case against him, creating a conflict, has no merit. The government called at trial no live witnesses that Mr. Shargel had previously represented. There was thus no occasion for any "independent counsel" to conduct cross examination.

■ The claim by Amuso's lawyers that Mr. Shargel "was" then the attorney for Casso is also misleading. Mr. Shargel filed no appearance for Casso in the case, nor could he represent Casso in the case unless Amuso waived the conflict. It is hardly surprising that in the past the Boss and the Underboss of the same tightly run Luchese Crime Family had been represented by the same attorney. In any event, at the hearing Amuso waived any objection to Mr. Shargel's prior representation of Casso.

Amuso's attorneys contend that the Court should have alerted Amuso to the possibility that Mr. Shargel might have a motive to refrain from pursuing a "plausible" strategy, that is, blaming Casso alone for all the crimes charged in the indictment of Amuso. The putative motive attributed by the attorneys to Mr. Shargel is an alleged hope for the future that, if Casso were ever caught, Mr. Shargel could perhaps represent him in a subsequent trial and collect still another attorney's fee.

The proof at trial showed that Amuso was no puppet ruler, and certainly not innocent in the ways of organized crime. He was an experienced and intelligent man who had worked his way to the top of a dangerous business. His relationship with Casso, whom he had appointed first as Consigliere and later as Underboss, was a close one. They were in each other's company almost constantly. With Casso as one of his chief weapons, Amuso jealously guarded his powers and privileges as Boss of the Luchese Crime Family.

It is hard to believe that even a minimally competent lawyer would have adopted any such suicidal strategy as trying to shift all blame to Casso. To have done so could not conceivably have exculpated Amuso. Indeed, given the relationship between the two, it might well have powerfully suggested Amuso's guilt. Moreover, it would have seriously undermined the most promising line of defense of attacking the credibility of the cooperators testifying for the government. Mr. Shargel exploited that possibility with great skill, making proficient use of the many sordid and vicious crimes these witnesses had committed.

The evidence established without any doubt that Amuso was the Boss and Casso the loyal Underboss, appointed by and holding office at the pleasure of Amuso. Amuso gave orders to Casso, not the other way around. Only Amuso, not Casso, could give permission to commit a murder. To have pretended that Amuso was some kind of figurehead who supinely allowed Casso to usurp his powers was no plausible strategy.

Amuso now says that at trial he "wanted" Mr. Shargel "to show that Casso acted on his

own" without Amuso's direction or approval, but that Mr. Shargel was extremely "reluctant" to adopt such a strategy. Amuso does not suggest how Mr. Shargel was suppose to "show" Casso acted on his own. The witnesses testified quite to the contrary. When Amuso barked, Casso arranged for others to bite. Whatever qualities the attorneys now attribute to Mr. Shargel, they do not accuse him of irrationality or inexperience. If in fact Amuso had suggested that Mr. Shargel try to show that Casso alone was responsible for all the charged crimes, doubtless Mr. Shargel would have been "reluctant" to follow the suggestion and would have explained to his client how foolhardy such a strategy would be.

### V

■ The other argument of Amuso's attorneys is headed by the statement that Mr. Shargel was a "witness to events presented" at Amuso's trial, and "participated in related crimes." The attorneys cite the proposition of law that "when an attorney is implicated in the crimes of his or her client," there is a *per se* violation of the client's Sixth Amendment rights. One might think from this wording that the attorneys had discovered and were revealing the sensational news that Mr. Shargel had a hand in some of the murders or perhaps one of the extortions of which Amuso was convicted.

The attorneys' briefs demonstrate that what they regard as a showing that Mr. Shargel "participated in related crimes" or was "implicated in the crimes" of his client are circumstances that had nothing whatsoever to do with anything Mr. Shargel did or witnessed with respect to Amuso or the Luchese Crime Family. The attorneys' argument is as follows:

Salvatore (Sammy the Bull) Gravano, the then Consigliere of the Gambino Crime Family, was indicted in the notorious "Gotti case" along with John Gotti and Frank Locascio, respectively the Boss and Underboss of that family. Mr. Shargel represented Gravano, Mr. Bruce Cutler represented Gotti, and Mr. John Pollok represented Locascio. On motion of the government, Judge I. Leo Glasser disqualified all three attorneys. Among the reasons for the disqualifications was that various tapes made of Gotti's conversations revealed that all three had received "benefactor payments" from Gotti to represent other Gambino members and had in effect become "house counsel" for the Gambino Crime Family. The voices of Mr. Shargel and Mr. Cutler were heard on some of the tapes.

All this was revealed publicly and in detail on August 1, 1991 by Judge I. Leo Glasser in his opinion in *United States v. Gotti*, 771 F.Supp. 552, 560 (E.D.N.Y.1991), aff'd, 6 F.3d 924 (2d Cir.1993), *cert. denied*, 511 U.S. 1070, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994). The published opinion received wide publicity and was printed in full in the *New York Law Journal* on August 5, 1991.

The revelations led to the criminal tax and obstruction of justice investigation of Mr. Shargel, the very investigation that Amuso considered when he stated to this Court that he still wished Mr. Shargel to represent him. The investigation did not concern Amuso or the Luchese Crime Family. Neither the investigation nor the tapes related to any murder, extortion, fraud, or other crime charged against Amuso. Yet Amuso's attorneys say that because two short excerpts from the many hours of the "Gotti tapes," excerpts having nothing to do with any wrongdoing by Mr. Shargel or with the disqualification of the three attorneys, were admitted in evidence at Amuso's trial, Mr. Shargel somehow "became a witness to events presented" at the trial. What he witnessed and could have testified to is not even implied.

The excerpts do not mention Mr. Shargel. He is not a party to the recorded conversations, which do not have the remotest pertinence to anything he did or said. It is not suggested that he was "house counsel" for the Luchese Crime Family or that he received "benefactor" payments from Amuso for representing other members of that family. While the excerpts were arguably relevant to the question of whether the Luchese Crime Family was an enterprise (a matter hardly subject to dispute) and engaged in gambling, there is no hint that Mr. Shargel's representation of Amuso bore in the slightest on either of those matters.

VI·

The Court has considered all of the arguments advanced in support of the petition and finds them to be without merit.

The petition for habeas corpus is denied. A certificate of appealability will not be issued because petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253; *see Reyes v. Keane,* 90 F.3d 676, 680 (2d Cir.1996).

So ordered.